UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EUGENE F. HENDRICKS,

                Petitioner,

vs.                                                         Case No. 3:20-cv-314-J-39PDB

WILLIAM P. BARR, et al.,

                Respondents.

_____

## ORDER

### I.  Introduction

Petitioner Eugene F. Hendricks, through a Pro Se Petition for Writ of Habeas Corpus (Petition) (Doc. 1) pursuant to 28 U.S.C. § 2241, challenges the lawfulness of his post-removal order of detention.   Respondents filed a Motion to Dismiss Petition for Writ of Habeas Corpus (Response) (Doc. 5).   The Court advised Petitioner and gave him an opportunity to file a reply.   See Order (Doc. 2).   Petitioner sought the appointment of counsel (Doc. 8) and filed a Supplement to the Petition (Doc. 10).   The Court ordered Respondents to provide the Court with an update on status of removal and appointed the Federal Public Defender to represent Petitioner.   Order (Doc. 13).   Respondents filed a Notice of Filing Declaration (Doc. 14).    On November 13, 2020, through counsel, Petitioner filed a Memorandum in Support of Habeas Corpus Under

28 U.S.C. § 2241 (Reply) (Doc. 18), and on December 4, 2020, a Notice of Reliance Upon Memorandum in Support of Habeas Corpus as Petitioner's Reply (Doc. 22).[1]

In the Petition, Petitioner states he does not challenge the validity of the removal order against him, but rather, he challenges his continued detention by Respondents, "who refuse to release him even though they are unable to deport him and will be unable to deport him in the reasonably foreseeable future."   Petition at 2.   Petitioner states he has made various efforts to facilitate his deportation, including filling out the forms requesting travel documents, calling the consulate's office several times and conducting three-way calls to the consulate's office with ICE representatives participating, and providing pertinent relevant documents including a passport-permanent resident card, a social security card, photocopies of his expired passport, and family heritage information.   Id. at 5.

## II.   Procedural History

Petitioner, a native of Kenya, adjusted his status to a lawful permanent resident of the United States (U.S.) on or about October 28, 1987.   (Doc. 5-1 at 3). He states he has resided in the U.S. since May 13, 1978.   Petition at 3.   On November 16, 2017, he was convicted of attempted lewd or lascivious molestation and sentenced to five years in prison.   (Doc. 5-1 at 3).   Petitioner "is not currently under sentence for any offense in either state or federal court and does not have any pending

---

[1] In this opinion, the Court references the page numbers assigned by the electronic filing system.

federal charges." Reply at 2. He came into the custody of Immigration and Customs Enforcement (ICE) on July 31, 2019. (Doc. 5-1 at 3). See Petition at 1. ICE charged him with a Notice to Appear as a native of Kenya and citizen of Seychelles. (Doc. 5-1 at 3). Petitioner's mother is from the Seychelles, and Petitioner requested to be removed to the Seychelles as he had lived there prior to living in the U.S. Id. The Immigration Judge, on September 13, 2019, ordered Petitioner removed to the Republic of the Seychelles. Id. No appeal was taken. Id.

Petitioner, on September 17, 2019, provided ICE with a copy of his expired British Overseas Citizen passport. Id. Although this was provided to the United Kingdom (UK) consulate for renewal, after two interviews with UK consul, UK Immigration informed ICE that Petitioner could not be removed from the US to the UK on a British Overseas Citizen passport. Id. Moreover, even if Petitioner applied for Entry Clearance, it would be denied because Petitioner has a criminal record in the US. Id. UK immigration advised that Petitioner would need to apply to the Seychelles for a Travel Document. Id.

ICE informed Petitioner, on October 22, 2019, that he needed to apply for a passport out of the Seychelles. Id. at 4. Deportation Officer (DO) Luis D. Baez helped Petitioner submit an Electronic Travel Document on November 1, 2019. Id. On December 17, 2019, DO Baez submitted a Post Order Custody Review (POCR) to the Field Office Director (FOD) as Petitioner's post-order detention had reached eighty days. Id. The FOD signed a Decision to Continue Detention Letter on

December 27, 2019, and this was served on Petitioner at the Baker County Detention Center.   Id.

On January 31, 2020, Stewart Gingerich, a Detention and Deportation Officer (DDO), employed with ICE Enforcement and Removal Operations (ERO), Removal and International Operations (RIO) at Headquarters (HQ), contacted Officer Baez, asking if he needed assistance in obtaining a travel document for Petitioner.   (Doc. 5-2 at 2-3).[2]   Thereafter, HQ ERO RIO sent an e-mail request to the Attaché assigned to the Permanent Mission of the Republic of Seychelles to obtain the status of the pending request for a travel document.   Id. at 3.   On February 5, 2020, the Attaché advised the case was under review.   Id. at 3-4.   Another update was requested on February 21, 2020, and the second official advised the case was under review in Victoria, Seychelles.   Id. at 4.   On February 24, 2020, HQ RIO sought the assistance from the Department of State.   Id.   On March 26 2020, HQ, ERO RIO completed its custody review and issued a Notice of Continued Detention.   Id.   The Department of State, on April 15, 2020, issued a formal diplomatic note to the Seychelles seeking a determination.   Id.

The Government of the Republic of Seychelles found, on April 21, 2020, that Petitioner's mother was a national of the Seychelles, but Petitioner's father was not. Id.   Therefore, according to the Government of Seychelles, Petitioner has no automatic claim to citizenship.   Id.   The Government of Seychelles advised that

---

2 DDO Gingerich states that historically, "approximately five people" were removed to the Seychelles in fiscal year 2016, and one was removed in 2019.   (Doc. 5-2 at 3).

Petitioner may apply for Registration as a citizen under Article 10 of the Seychelles constitution based on Petitioner's mother being born in the Seychelles.   Id. However, it was also advised that Petitioner must use a valid existing passport to travel to the Seychelles for the purpose of submitting the application.   Id.

On April 22, 2020, HQ ERO RIO contacted the UK asking if Petitioner is eligible to have his expired British Overseas Citizen passport reissued.   Id. at 4-5. The UK, on April 29, 2020, confirmed this could be done upon receipt of the application, payment, and a travel itinerary.   Id. at 5.   On June 6, 2020, the U.S. Ambassador to the Seychelles spoke with the Secretary of State of Seychelles to seek assurances that Petitioner will be admitted to the Seychelles on a UK Emergency Travel Document as a non-citizen to allow Petitioner to seek to formalize his status.[3] Id.   On June 9, 2020, HQ ERO RIO engaged the UK in initiating the process to reissue Petitioner's British Overseas Citizen passport.   Id.   On June 12, 2020, the U.S. Ambassador to Seychelles spoke with the Secretary of State of Seychelles.   Id.

As of June 15, 2020, the Seychelles airport was open, but limitations were in place on who could enter the country, and in particular, travelers from the U.S. "might not be permitted to enter the Seychelles until August 2020."   Id.   As such, ICE states it expects that Petitioner's removal is imminent upon final approval from

---

[3] Meanwhile, on May 29, 2020, HQ RIO requested a travel document from the Embassy of the Republic of Kenya, but the consular official for Kenya advised ERO that Petitioner did not qualify for the document as he is not a Kenyan.   (Doc. 5-2 at 5).   On August 4, 2020, the Embassy of Kenya denied ICE's request for a travel document for Petitioner.   (Doc. 14-1 at 3).

the Seychelles and the receipt of a final itinerary for travel.   Id.   DDO Gingerich concludes that Petitioner's travel to the Seychelles "is significantly likely in the reasonably foreseeable future."   Id.

The Court required Respondents to file an update on status of removal.   Order (Doc. 13).   See (Doc. 5-2 at 5) (stating the Government of Seychelles is said to have reached some conclusions and the U.S. State Department is expecting a diplomatic note with a follow-up call in June, 2020).   DDO Gingerich's Declaration of Deportation (Doc. 14-1) states that on July 8, 2020, ERO Miami completed an application with the UK to replace Petitioner's British Overseas Citizen passport, to be issued within approximately 10 to 12 weeks.   Id. at 2.   Notably, on July 17, 2020, the Seychelles issued a Diplomatic Note stating it will not issue a travel document to Petitioner and grant his admission to Seychelles as he is not a national.   Id. at 2-3. Furthermore, Seychelles found Petitioner has no automatic claim to citizenship by virtue of the fact that his father was born outside Seychelles prior to the country's accession to Independence in June 1976.   Id. at 3.

Thereafter, on July 21, 2020, the U.S. Ambassador spoke with the Secretary of State of Seychelles and the Secretary advised that Petitioner cannot be admitted to the Seychelles to complete his application process because he would have no other country to return to while awaiting final determination on his citizenship application. Id.   On August 12, 2020, the Seychelles issued a Diplomatic Note advising that Petitioner may wish to apply for citizenship under Article 10 of the Constitution of the Republic of the Seychelles, noting the requirement of a citizenship eligibility

6

examination.  <u>Id</u>. at 3-4.   Communications continued as to how Petitioner would submit the Citizenship packet, pay the fee, and actually complete the examination. <u>Id</u>. at 4.

Importantly, the U.S. Ambassador to the Seychelles advised that proposed citizenship based upon eligibility through the mother was going to be difficult as this matter was "essentially predetermined."  <u>Id</u>.   Thus, the remaining issue is the citizenship of Petitioner's father, as yet undocumented by HQ ERO RIO, and the only consideration for citizenship would lie through "the father's possible Seychelles citizenship[.]"  <u>Id</u>.

Taking a different tact, HQ ERO RIO, on August 25, 2020, discussed the matter with a consular official of the Embassy of the Republic of Uganda to determine if Petitioner could claim status in Uganda based on the assumption Petitioner's father was born in Uganda.   The Uganda official described this possibility would be "far-fetched."  <u>Id</u>. at 5.

DDO Gingerich reports that the Seychelles' international airport is open but there are limitations on who is permitted entry into the country.   <u>Id</u>.   Those traveling from the U.S. are permitted entry only with special permission and subject to testing protocols.   <u>Id</u>.   DDO Gingerich surmises:

> Based on the final order of removal, the status of the case as a priority for removal, the assurance that an Emergency Travel Certificate may be issued by the United Kingdom, the pending application to renew the Petitioner's UK British Overseas Citizen passport, the pending high level engagement between ERO, the State Department and the Government of the Republic of Seychelles – to include

> pending efforts to obtain documentation about the Petitioner's father in the Seychelles which appears necessary for the consideration of his citizenship application, and a pending request to have the Seychelles interview the subject[,] ICE expects that Hendricks' removal to the Seychelles will be imminent upon final approval of the above listed items and the receipt of a final itinerary for his travel.

Id. at 5.

### III.   Governing Legal Principles

#### A.   Jurisdiction

Petitioner asks this Court to issue the writ of habeas corpus pursuant to 28 U.S.C. § 2241.   Under 28 U.S.C. §2241(c)(3), a person held in custody can petition for a writ if "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]"   Thus, federal courts, under this provision, have jurisdiction to hear cases challenging the lawfulness of immigration-related detention.   Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001).

#### B.   Relevant Law

Petitioner, in his Reply, states that any further detention results in a violation of his Fifth Amendment right to due process of law.   Reply at 1.   As such, he seeks his immediate release on the ground that his continued detention violates the Due Process Clause of the Fifth Amendment.   Id. at 14.

This Court has jurisdiction to hear the case.   Akinwale v. Ashcroft, 287 F.3d 1050, 1051 n.1 (11th Cir. 2002) (per curiam).   "The Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any 'person . . . of . . . liberty . . . without

8

due process of law.'" Zadvydas, 533 U.S. at 690.  The Fifth Amendment certainly entitles aliens to due process in deportation proceedings.  Reno v. Flores, 507 U.S. 292, 306 (1993).  Indeed, the indefinite detention of aliens raises serious constitutional concerns as the Supreme Court has unequivocally said that, "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

More specifically, pursuant to 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."  Detention during this 90-day removal period is mandatory.  8 U.S.C. § 1231(a)(2).  Although "detention during deportation proceedings [is a constitutionally valid aspect of the deportation process[,]" Demore v. Kim, 538 U.S. 510, 523 (2003), ICE should make every effort to remove an alien within a reasonable time, which the Supreme Court defined as a period of six months after an order of removal is final.  Zadvydas, 533 U.S. at 701.

The government may detain an alien beyond the removal period if he is, among other things, a criminal alien or the Attorney General determines the alien is a risk to the community or unlikely to comply with the order of removal.  8 U.S.C. § 1231(a)(6).  Although § 1231(a)(6) does not provide a specific detention period, Zadvydas holds six months is the presumptively reasonable period to detain a removable alien awaiting deportation.  Zadvydas, 533 U.S. at 701.  After the 6-month period, the period set forth in Zadvydas as a reasonable time, "once the alien

provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." <u>Id</u>.  Of import, "for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." <u>Id</u>.

## IV.   Findings of Fact and Conclusions of Law

The record demonstrates the Immigration Judge ordered Petitioner's removal to the Seychelles on September 13, 2019.  Therefore, Petitioner has shown he has been held over fifteen months in post-removal detention.  Moreover, based on the record before the Court, Petitioner has provided a wealth of evidence supporting good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future.   The government's attempt to remove Petitioner to the Seychelles has been an effort in frustration.   Now the prospect of his removal to the Seychelles is even dimmer if not entirely unlikely under the circumstances presented.

The Government of the Republic of Seychelles, on April 21, 2020, found Petitioner's father was not a nation of the Seychelles.   (Doc. 5-2 at 4).   Petitioner's proposed citizenship based upon eligibility through his mother is a non-starter as the matter has been "essentially predetermined."   (Doc. 14-1 at 4).   As such, Petitioner has no automatic claim to citizenship.   (Doc. 5-2 at 4).   Furthermore, the Seychelles issued a Diplomatic Note finding no claim to citizenship by virtue of the fact that Petitioner's father was born outside Seychelles prior to the country's accession to Independence in June 1976.   (Doc. 14-1 at 3).   Additionally, the Secretary of State

of Seychelles opined that Petitioner cannot be admitted to the Seychelles to attempt to complete the application process because he would have no other country to return to while awaiting final determination on his citizenship application.   (Doc. 14-1 at 3).   As Petitioner is not a national of the Seychelles, the Seychelles will not issue a travel document to Petitioner.   (Doc. 14-1 at 2-3).

Respondents state there are pending efforts to obtain documentation about the Petitioner's father in the Seychelles, admitting that this appears to be necessary to show Petitioner's father is a citizen of the Republic of Seychelles in order to achieve Petitioner's removal to the Seychelles.   Id. at 5.   To date, Respondents have been unable to document the citizenship of Petitioner's father; however, the government of the Seychelles has at least twice stated Petitioner's father was not a native of the Seychelles.

Here, Petitioner has easily shown post-removal order detention in excess of six months.   He also has provided evidence of good reason to believe there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future. See Akinwale, 287 F.3d at 1052.   Indeed, "[s]ince August 19, 2020, after communication with the United States Ambassador to the Seychelles, immigration authorities have known efforts to remove Mr. Hendricks are precluded because when Mr. Hendricks was born derivative citizenship of the Seychelles was through the father only and Mr. Hendricks' father was not a native of the Seychelles."   Reply at 8.   The record demonstrates immigration officials have been entirely unsuccessful in

obtaining travel documents essential to achieve the removal of Petitioner from the U.S.

By all accounts, Petitioner has cooperated with the government officials to accomplish his removal to the Seychelles.   See Singh v. U.S. Att'y Gen., 945 F.3d 1310 (2019) (finding fact issues remained as to whether the petitioner's applications for travel or other documents were made in good faith).   At this stage, after over fifteen months of detainment post-removal order, what counts as the "reasonably foreseeable future" has shrunk considerably.   Zadvydas, 533 U.S. at 701.   The unlikelihood of removal has been further evidenced by the fact that since the government's last update on the status of Petitioner's removal filed on September 9, 2020, three months ago, Respondents have not successfully removed Petitioner to the Seychelles.   In light of this fact and the government's continuing inability to successfully remove Petitioner to the Seychelles, Petitioner has established a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.   Thus, the burden shifts to the government to rebut the presumption with sufficient evidence establishing there is a likelihood of removal in the reasonably foreseeable future.   Zadvydas, 533 U.S. at 701.

Respondents rely on the assurance that an Emergency Travel Certificate may be issued by the UK, the pending application to renew the Petitioner's UK British Overseas Citizen passport, and the pending high level engagement between ERO, the State Department and the Government of the Republic of the Seychelles (including pending efforts to obtain a document "about the Petitioner's father in the Seychelles

which appears necessary for the consideration of his citizenship application," and the pending request to have the Seychelles interview Petitioner).   (Doc. 14-1 at 5). Based on the Seychelles past denials that Petitioner's father was a national of the Republic of the Seychelles, the prospect of a different decision seems, at best, slight; therefore, the Respondents' expectation that there will be issuance of a final itinerary for Petitioner's travel and his ultimate removal to the Seychelles seems improbable. Also, Respondents have not provided the Court with any documentation "about the Petitioner's father in the Seychelles" which would convince the Seychelles to consider issuing travel documents to Petitioner based on some contention that Petitioner's father was a citizen of the Republic of Seychelles.   Moreover, Respondents' optimistic statement that removal was imminent occurred three months ago, yet Petitioner remains detained.

Petitioner is in a peculiar situation regarding his birthright and citizenship, hindering the ability of the government to remove Petitioner to the Seychelles. Apparently, he is a native of Kenya and had an expired British Overseas Citizen passport.[4]   Petitioner submits his father was born in Uganda and his mother was born in the Seychelles.   Reply at 3.   Petitioner states he entered the U.S. on May 13, 1978 and has resided in Florida.   Id. at 4.   See Petition at 4.   He became a lawful permanent resident of the U.S. around October 28, 1987.   (Doc. 5-1 at 3).   His connection to the Seychelles appears attenuated and his citizenship status remains

---

[4] Apparently, Petitioner's parents never exercised the option for citizenship for Petitioner.   Reply at 3-4.

muddled, as evidenced by the Respondents inability to obtain the necessary travel documents to remove Petitioner to the Seychelles.   At this point, Petitioner's post-removal detention has spanned over fifteen months.   The Seychelles has found him to be ineligible for travel documents as he is ineligible for derivative citizenship through his father and he is not entitled to derivative citizenship through his mother.

The Court finds Respondents have not rebutted Petitioner's showing that there is no reasonable likelihood that he will be removed in the foreseeable future. Petitioner has been detained for a period more than double the six-month period prescribed in <u>Zadvydas</u>.   Respondents attempt to rely on their assertion that they may be able to show "the father's possible Seychelles citizenship" (Doc. 14-1 at 4), particularly when nothing concrete has been offered to support that unlikely position, is simply not enough to allow Petitioner's continued detention after over fifteen months of post-removal detention.   Although Respondents have made admirable attempts to bring Petitioner's removal to the Seychelles to fruition, they have failed to show there is a likelihood of removal in the reasonably foreseeable future. Therefore, the Petition is due to be granted and Petitioner is entitled to immediate release on conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3).

Accordingly, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **GRANTED**.

2.      Respondents are directed to **IMMEDIATELY RELEASE** Petitioner Eugene F. Hendricks on conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3).

3.     The **Clerk** shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of December, 2020.

_____
BRIAN J. DAVIS
United States District Judge

sa 12/9
c:
Counsel of Record

15